Mr. Feldman, may it please the Court. My name is Jason Feldman, and I represent Appellant and Petitioner Morrad Ghonim. I'd like to reserve two minutes for rebuttal, and I'll be mindful of the clock. Mr. Ghonim was not permitted to present his defense that his wife was killed in a gang shooting, in violation of his Fifth, Sixth, and Fourteenth Amendment rights. With the Appellant's position at the Trial Court, the California Courts of Appeal, and the District Court, each misconstrued the nature of the evidence and the defense in violating Appellant's rights. The jury in this trial was charged with deciding the motive of the previously convicted shooter, Leon Martinez. Was it a murder for hire by Appellant, or was this a shooting by Martinez to defend the reputation of his criminal street gang? Contrary to the holdings of the lower courts, evidence of gang membership was not sought to be admitted to impeach the character or veracity of Martinez. Why don't Martinez admit a killing? Excuse me? He admitted a killing. He was previously convicted in trial. He had maintained his innocence until he was convicted of trial. No, I'm just saying that there was no issue. You didn't have to worry about his character, because he admitted that he committed the crime, so you were introducing this evidence to show what his character was. Go ahead, I'm going to interrupt. Right, well, the purpose of introducing the evidence was to show a different motive. This was a case about motive, whether the shooter was acting on his own accord or whether he was hired to do it. And the Appellant's defense, as he told the police and the deceitful's family close in time to this crime in 1992, this was a shooting in the park by a gang member after a verbal altercation with his high school sweetheart and wife, Vicky Goner. At Appellant's trial, Martinez denied being a gang member. The trial court denied the admission of any of the multitude of reliable evidence proving his gang status, including the presence of gang tattoos on Martinez, his self-admissions to the Department of Corrections, and the testimony of an expert witness. All the jury heard was Martinez's denial. The trial court reasoned that the gang evidence was irrelevant and cumulative, failing to appreciate the importance to the defense that this was a gang shooting. The district court correctly identified Chambers v. Mississippi as the well-established crime. What evidence do you have that it was a gang shooting? Well, the evidence, that was the story, the version of events that the Appellant gave to the police at the time. So they were stuck in that story. That's what he said. There were gang members there. How did his story come in at trial? Was it in, I take it the government introduced his prior statements as non-hearsay party opponent, and then perhaps under rule of completeness brought in parts of it that were favorable to him? How is it that the story that it was a gang shooting got in front of the jury in terms of evidence, not in terms of word count? Right. Mr. Godin did not testify in his defense. There were statements made to the police, and there was also a video that was created around 2010, about 15, 20 years after this incident, where they took Mr. Godin back to the scene for them to describe what happened. So that came in, that was played for the jury and came in for the truth? Yes. And the same thing, how did his statements come in? Did they come in through the victim's brother or through an officer? Through the officer. Through the officer. Yes. And then they actually played the video, so they heard Mr. Godin's words, and they saw him as he was saying it, but much, much after the fact. Can I ask you something? I'm just trying to follow up. Did the victim's brother also testify to Mr. Godin's prior statements? Yes, there were family members that were testified. I believe that included the brother about what Mr. Godin told to the family, yes. Okay. And what he told the family was that this was a gang shooting. So the district court correctly identified Chambers v. Mississippi as the well-established Supreme Court precedent issue, but employed a due process standard that was too high. The court should have utilized the disputed evidence standard as stated by the Ninth Circuit in Perry v. Russia. As the Ninth Circuit said, the crucial and exculpatory test will not be proper in all circumstances. When the state interest in suppression is weaker, evidence with less significance becomes protected. This disputed evidence standard was employed by the court in Pettyjohn, which is a First Circuit case, and Crenshaw here in the Ninth Circuit. And in those cases, there was a state interest that was not very high, like here, beyond the general substantial interest in an efficient trial. In Chambers, there was a state evidentiary voucher rule to contend with. Here we have a trial court that didn't seem to grasp the nature of the defense and found the opponent's defense to be a quote-unquote waste of time. So there was evidence presented that Martinez was prone to violence and associated with gangs, right? Yes. So what would the incremental value have been of showing not just that he was associated with gangs, which presumably would have been consistent with him being in the park with the gang members, but was technically a member of the gang? What was the additional value of that? Right? I think there's a huge difference between being identified as an associate of a gang or someone that's friendly with a gang to someone who's an actual gang member. And, you know, it goes to motivation. The jury was charged with solicitation versus gang shooting, and gang status is the threshold question. To be able to talk about gang culture, to be able to talk about jerks, to be able to talk about how important respect is to a gang. If there's a group of gang members that are standing there and someone disrespects that gang member, it's highly unlikely that it's going to be the non-gang member that's going to step forward and feel the need to defend the reputation of that gang member. And are we supposed to take judicial notice of that? Well, that would have been the defense if they were able to bring it up. No, no, no, but what you just said was much more. You were describing what would result from the fact that he was a gang member. You just gave a scenario for which I don't see a single shred of evidence in the record. Right. Well, the evidence, any gang evidence was not allowed to be admitted at this trial. No, no, but what would result from the fact that he was a member of a gang, aside from his admission that he associated with gang members, including on the day of the murder? Yes, but the defense was gang shooting. The defense was not gang associate shooting. And the evidence of gang status was suppressed. There was an expert witness that was prepared to testify, and that's part of the record, prepared to testify. But he was prepared to testify that he was a gang member. Yes. And as far as I know, everything you've said, that they were going to shoot this woman because she insulted a member of the gang and all that followed from that, I don't see a shred of evidence in the record to support that. There was not an offering made by the defense about what I just testified to in terms of testimony about the importance of respect, turf, and so forth. Exactly. So there was no evidence of that. But this trial should have been the state's version of events versus the defense's version of events, and the defense was not even allowed. Can I ask you about the state's version of the events? Martinez came to the park, I'll call it the park, dressed to commit a murder. He was wearing two sets of clothes. After he left, he threw off his first set of clothes. This was in the summer, no less, and threw it into the bushes where it happened to be, where it was seen by someone who was walking in the park. So he came there essentially to commit a murder. And then when the shooting takes place, under your theory, he doesn't stop with one shot. He wants to make sure that she's killed, and he doesn't stop shooting until the last shot, the fatal shot, until he shoots her in the head. So he's dressed to kill, which would suggest a certain degree of significant premeditation, which rebutts your non-evidence to begin with. And then you have the inconsistencies in the defendant's own testimony. He said once there were shooters, plural, that the shots came from the bushes, which I think he said maybe he had set three or four car lanes away from where he was sitting. When the coroner testified that the shots came much closer, it would be the fatal shot was very close when it hit her head. I mean, this struck me as being the very fact that he came dressed to kill and to commit that crime in a manner in which he went about it totally refutes with your non-evidence that you were propounding that somehow he was a member of the gang, the gang was disrespected, and when a member sees the gang disrespected, he goes out and shoots them, for which there's no evidence. Well, I would say it doesn't totally refute, and I don't think it's for the trial court to judge or evaluate the strength of the defense. There was that issue where he had two layers of clothes and that's how the clothes were found, but there's also evidence that Mr. Martinez was homeless. It was a sweatshirt that he took off. It's not like he was dressed in a doctor's outfit where you couldn't spread DNA and he had a silencer on a gun. It wasn't like that. He took off his sweatshirt, and he may have had another pair of pants, I'm not sure. He took off his sweatshirt and had that there, right? And he came dressed to commit a murder. That's very important because your non-evidence is kind of a spur of the moment response to an alleged comments that were made by Vicky. Right. There were a lot of inconsistencies that were found in Martinez's testimony, but one of the things he said was that it was supposed to look like a robbery. So, you know, you're saying he may have come dressed to commit a murder, but there was nothing about a robbery that ended up coming to be. Nothing about this plan. Supposedly the plan was that your client wanted him to make it look like a robbery, but that's anything in or there that's still inconsistent with your non-evidence defense that somehow this was done to protect, to show that, to protect the gangs, to protect the reputation of the gang, that you had to go out and kill somebody to insult a member of the gang. Right. But this is what we have trials for. And that's, you know, what Crain versus Kentucky said, that the defendant needs to be apprised of full opportunity to present his defense. And maybe the jury would have found, as you did, but there was a lot of evidence on both sides that played to defendant's version and also played to the people's version, and the people may have made all those similar arguments that you're making. I mean, this deals with the significance of a particularly narrow one item that, it seems to me, if it's not harmless, it was not that critical in terms of the defense. Well, there are other reasons why it was critical to the defense. First of all, gang status would have been the only corroboration for appellant's belief of offense, thereby bolstering his credibility. We just said, how does gang membership support counsel's version of the events? Because that's what Mr. Gonem said in 1992, that she was shot by a gang member, and lo and behold, 20 years later, when they find the shooter and convict him, he is a gang member. And the prosecutor argued at length during closing argument that Mr. Gonem couldn't say one true thing in his defense, couldn't identify one true fact about the shooter, and that whole argument would have been foreclosed. They could have said, yeah, he said gang, and it is gang, and to allow Mr. Martinez's denial. And also, you know, Mr. Martinez was caught in many lies, and this wasn't about his veracity solely, but why would he choose to lie about his gang status? Because he's trying to hide his true motive. Do you want to reserve the rest of your time? Yes, I do. Thank you. Ms. Inberg. Yes, good morning. May it please the Court, Deputy Attorney General Kristen Inberg on behalf of the state. The California Court of Appeals' rejection of petitioner's claim that his constitutional right to present a defense was violated when the trial court excluded the certain evidence that Martinez was a gang member was reasonable under AEDPA because the evidence was not critical to his defense or directly exculpatory. As my opposing counsel has noted, the issue in this case was whether Martinez acted alone. Do you agree with the counsel's, in the questions I had, I was trying to understand what the evidentiary record was with respect to the defense that it was a gang shooting. Do you agree with his recitation of what the evidentiary basis for that argument was in the record? I believe that the question had to do with what evidence was presented that supported petitioner's theory of defense. Is that correct? Correct. Because the petitioner says, you know, this item of evidence wasn't let in for the defense. So I'm trying to understand what was let in for the defense and what was the factual basis that they had to work with in order to decide whether this other piece, how it fits in the picture. So I want to understand it, but I want to make sure that you agree with what he said. It was the video, the prior statements of Mr. Donovan as reported by an officer and then as reported by family members. And is that correct? And is it correct that all of those matters came in for the truth of the matter as to a defense? Yes, Your Honor. I agree in that those were the pieces, and I agree. All right. Thank you. You're welcome. So the issue was whether Martinez acted alone when he killed Vicki or whether he was hired by a petitioner to kill her. It was petitioner's theory that Martinez acted alone and shot Vicki in retaliation after being provoked by her. As a result, petitioner sought to introduce seven pieces of evidence, which included CDC reports and expert testimony that Martinez was a gang member at the time of the murder. But whether Martinez was actually a gang member at the time of the killing was not critical to petitioner's theory because being a gang member was not when Martinez shot Vicki. According to petitioner, Martinez shot Vicki because he was provoked by her. He could have done that whether or not he was a gang member. It was not necessary for Martinez to actually be a gang member for the jury to believe that Martinez acted alone and shot Vicki because he was provoked. Additionally, as we've discussed, petitioner presented his defense. We've discussed the testimony. We've discussed the video. All of that was brought in. Therefore, the jury heard the defense. Excuse me. There was also other evidence that came in that supported his defense. There was telephone calls between Martinez and his wife where Martinez said he was pressured to make up a story about petitioner being involved in the murder, and if he did so, he'd receive a shorter sentence. Martinez admitted that he agreed to testify against petitioner for a reduced sentence and that he had several prior felony convictions. All of this evidence was sufficient to allow an inference that Martinez acted alone when he shot Vicki. Additionally, the gang evidence would have added minimal value to petitioner's claim that it supported Martinez's motive. Martinez's motive was retaliation in response to Vicki's provocation. Under petitioner's theory, retaliation is why he shot Vicki. At most, the gang membership provided an additional gloss on his motivation, but it's not why he shot Vicki. Exclusion of such minimal evidence does not amount to a constitutional violation of the right to present a defense under Chambers. Lastly, even if the evidence wasn't relentlessly excluded, there's no reasonable probability that the jury would have reached a different result had it heard it. As Justice Corman has noted, Martinez was dressed to commit a murder when he went to the park. He was dressed in multiple layers of clothing, and he admitted on the stand, yes, I dressed in multiple layers of clothing because I was going to commit a murder. Also, the testimony that petitioner hired him to kill Vicki was corroborated by Martinez's girlfriend, who testified then in 1998, six years after the murder. Martinez told her that he was hired by petitioner to kill Vicki. During an interview with the prosecutor, Martinez said that petitioner paid him $500 to kill Vicki. Petitioner's ex-wife testified that petitioner told her if she ever divorced him, that he would hurt her, and that it cost him $500 in the past. In short, the gang evidence would not have made any difference to the jury's verdict in this case. In sum, the gang evidence was not critical to petitioner's defense or the issue in the case, and petitioner presented his defense to the jury. As a result, petitioner's constitutional right to present a defense was not violated, and the district court's judgment should be affirmed. I'm open to any questions that the court may have for me. Otherwise, I would submit. Thank you. Thank you, Ms. Enberg. Thank you. Mr. Goldman. I'd like to quickly respond to some of the points by the attorney general. She said that the gang evidence was not important to the defense. It actually was a defense. And this is a case, and it goes to motive, and this is a case where motive was central. It was also stated that the evidence was not directly exculpatory. I don't believe directly exculpatory is required. And also, the district court made that an important part of their opinion, but also failed to use the five-part balancing test in Miller v. Stagner. But Perry v. Russian said that, you know, the corresponding exculpatory test will not be proper in all circumstances, and that it's not a requirement that the evidence be directly exculpatory. If it was, it would be impossible to have a due process violation in a case like this where you know who the perpetrator was, and it's just a question of motive. So that can't be the rule of the court. This should have been a case about, you know, whether this was a spontaneous shooting by a gang member in response to being disrespected. But instead, the defense was arguing that a man like Martinez does not need a reason to kill. And that's a much weaker argument, and I think that you can tell that it is based upon the verdict of this case where the evidence was really shaky. You know, in terms of harmless error, if there's any constitutional violation found, I think that it would have to be found that it was a substantial and injurious effect on the verdict. There were several pieces of evidence in this case where you would be surprised that there was a conviction. With these present, there was a video that was played for the jury where the two then suspects, the appellant and Martinez, were placed in a jail cell together. This was played for the jury. Law enforcement put them there to film them to see how they'd react to each other. And instead, the video showed that they didn't recognize or acknowledge each other in any way. There was no forensic evidence or physical evidence linking the appellant to the crime. There was no documentary evidence of any kind corroborating the people's allegations of murder for hire. There was no clear motive for appellant to orchestrate this heinous crime against his teenage wife with their baby in the back seat. Thank you. Thank you very much. Thank you, Your Honors. Thank both counsel for their helpful arguments and the cases submitted.
judges: MILLER, COLLINS, Korman